ROSS v. CHARLESTON &c. COMPANY.

1. EXCEPTIONS.—From a short order sustaining a demurrer to the complaint for not stating facts sufficient to constitute a cause of action, the exceptions taken in this case were not faulty in being too general.

2. AN EXCEPTION which claims that the complaint should have been held good, irrespective of the paragraphs in which a stated word was used, is not in violation of Rule 5 of this court, which applies only to exceptions containing a reference back to the exceptions taken to a referee's report or probate judge's decree.

3. CAUSE OF ACTION—CHARTER PARTY.—A complaint that states an injury received by plaintiff from a negligent act of defendant's steamboat, navigated by defendant's agents and servants, does not nullify its statement of a cause of action by the further allegation, that said steamboat was at the time "chartered" to a railroad company, the extent of the charter-party not being stated.

4. IBID.—CONTRADICTORY STATEMENTS.—A complaint that states a good cause of action is not demurrable because of further allegations that are inconsistent with such statement, or contradictory thereof.

Before TOWNSEND, J., Charleston, March, 1894.

Action by Marion Ross against the Charleston, McClellanville and Santee Transportation Company, commenced October 14, 1893. The case came up on the following exceptions by

plaintiff to an order of the Circuit Judge, "that the demurrer be sustained and the complaint be dismissed with costs:"

1st. Because the said judge erred in sustaining the demurrer to the complaint, and dismissing the same with costs, "on the ground that it does not state facts sufficient to constitute a cause of action" against the defendant, inasmuch as it alleges that the said steamer "Louise" was chartered by the Northeastern Railroad Company for certain purposes, and in the discharge of the said purposes inflicted the injury, if any, on plaintiff, thereby, by the use of the word *"chartered,"* unlimited and unqualified, relieving the defendant of all liability; whereas he should have held that the said word *"chartered"* is explained, limited, and qualified when the paragraphs in which the said word occurs are read and construed in connection with the allegations of the other paragraphs of said complaint.    2d. Because the said judge erred in holding that it was necessary to limit or qualify in any way the said word "chartered" (other than as limited and qualified in the complaint) to constitute a cause of action against the defendant.    3d. Because the said judge erred in not holding that, although the said complaint alleges in effect that the said steamer "Louise" was chartered by the Northeastern Railroad Company for a specific purpose, and in the discharge of that purpose inflicted the injury complained of, it nevertheless also alleges that the said steamer at said time was owned, operated, and navigated by the defendant, its agents and servants, and that the said injury was caused by the carelessness, negligence, improper and unlawful conduct of the said defendant, its agents and servants, while so owning, operating, and navigating the said steamer, and, therefore, states facts sufficient to constitute a cause of action.    4th. Because the said judge erred in not holding that the said complaint, irrespective of the paragraphs in which the word "chartered" is used, states facts sufficient to constitute a cause of action.

*Messrs. Buist & Buist* and *M. R. Rivers,* for appellant.

*Mr. H. E. Young,* contra.

November 2, 1894.   The opinion of the court was delivered by

Mr. Chief Justice McIver. The sole question in this case being whether the Circuit Judge erred in sustaining a demurrer to the complaint, upon the ground that the facts stated therein are not sufficient to constitute a cause of action, it will be necessary first to ascertain what are the allegations contained in the complaint. These allegations may be stated substantially as follows: 1st. That the defendant is now, and was at the times hereinafter mentioned, a corporation, and as such owned and operated a certain steamboat known as the "Louise." 2. That on or about the 15th day of May, 1893, the said steamboat "Louise" was chartered by the Northeastern Railroad Company "for the purpose of towing to the city of Charleston boats containing vegetables from the neighboring country, and intended for shipment over said railroad." 3. That on the said 15th of May, 1893, plaintiff owned and operated a certain sail boat, known as the "David John," used by plaintiff for carrying vegetables to the city of Charleston, "and that said boat, at the time of the collision hereinafter mentioned, was tight, staunch, strong, and in every way suited for the purpose for which she was used." 4. That on said 15th of May, 1893, while plaintiff's boat was on her way to Charleston, loaded with vegetables for shipment, the defendant caused its said boat "Louise" "to approach plaintiff's said boat, to stop, and then and there offered, in accordance with the purposes for which said steamboat was chartered, to tow plaintiff's said boat to Charleston, having at said time the sloop 'Gipsy' in tow." 5. That plaintiff accepted the offer made, and, "in obedience to the directions of defendant, attempted to place his said boat to the stern of the said sloop 'Gipsy,' for the purpose of being towed as aforesaid, but in consequence of the careless, negligent, improper, and unskillful management of the defendant and its agents in running the said steamboat 'Louise,' plaintiff was prevented from carrying out the directions given, and his said boat was sunk, and with the vegetables aforesaid entirely lost." 6. That said loss to plaintiff "was caused by the careless, negligent, improper, unskillful, wrongful, and unlawful conduct of the defendant, and its agents and servants navigating the said steamboat 'Louise,' for the reason that, contrary to proper

care, skill, and caution, the said defendant, its agents and servants, caused the said steamboat to start off without having allowed plaintiff sufficient time for carrying out the directions given by the said defendant, its agents and servants, and without having seen, as the said defendant, its agents and servants, should have, that the said boat of plaintiff was properly in position, and prepared for the said steamboat to start off." 7. "That the said defendant, its agents and servants, by reason of their neglect, inattention, and improper conduct in prematurely and unexpectedly starting the said steamboat 'Louise,' caused the said sloop 'Gipsy,' towed as aforesaid, to run into and strike with great force and violence the said boat of plaintiff, thereby capsizing and sinking her, loaded with vegetables as aforesaid, the property of plaintiff, to his loss and damage three hundred and fifty dollars."

Upon the reading of this complaint, the defendant demurred orally, on the ground that it did not state facts sufficient to constitute a cause of action, "inasmuch as it alleges that the steamer 'Louise' was chartered by the Northeastern Railroad Company for certain purposes, and in the discharge of the said purposes inflicted the injury, if any, on the plaintiff." The Circuit Judge, in a short order, without stating any reasons, sustained the demurrer, and rendered judgment dismissing the complaint with costs. From this judgment plaintiff appeals upon the several grounds set out in the record, which it is due to respondent should be set out in the report of the case, as it is insisted by its counsel that these grounds are objectional in point of form, as being too general in their nature, and also in violation of Rule 5, forbidding a reference back to the exceptions taken to the report of a master or referee, or to the decree of the judge of probate.

We will first dispose of these preliminary objections, neither of which are, in our judgment, tenable. As to the objection that the grounds of appeal are too general, we must say that they are much more specific than those which we have seen in any case that we can now recall, where the appeal has been from a short order, like this, sustaining a demurrer upon the ground that the complaint does not state facts

sufficient to constitute a cause of action. Inasmuch as there are no grounds stated in the order upon which the demurrer was sustained, and no specific ruling made as to any legal proposition, except the general proposition that the demurrer was well taken, we do not see how the grounds of appeal could have been any more specific than they are.

As to the violation of Rule 5, called in the argument of respondent's counsel the "reference back" rule, it seems to us from the express terms used in that rule very obvious that such rule has no application to this case.

We do not think it necessary to consider the grounds of appeal *seriatim,* for it seems to us very obvious that a good cause of action is stated in the complaint. If the allegations found in the complaint are to be taken as true— and they must be so taken, under the demurrer—then it is plain that the plaintiff, in his complaint, has stated facts showing that he sustained an injury to his property by the careless, negligent, and unlawful act of the defendant, through its agents and servants, and, if so, then a cause of action has certainly been stated.

But it is contended by the counsel for respondent that the allegation in the complaint that the steamer "Louise" was chartered by the Northeastern Railroad Company, and in the service of that company at the time the disaster occurred, is inconsistent with, and contradictory of, the other allegations in the complaint, to the effect that the injury was caused by the act of the defendant, its agents and servants; and hence, to use a common phrase, the plaintiff has "stated himself out of court"—that, if he has any cause of action at all, it is against that railroad company, and not against the defendant company. This position is founded upon the unwarranted assumption that whenever a vessel is chartered by any person or corporation, the charterer becomes the owner, for the time being at least, of such vessel, and as such liable for any injury done to a third person by the mismanagement or misconduct of those in charge of the vessel, and that the real owner is relieved from any such liability. This we do not understand to be the law. On the contrary, the rights and liabilities of the charterer and the real

owner, respectively, depend upon the terms of the charter-party; and of these terms the complaint does not purport to speak.

In *Leary* v. *United States*, 14 Wall, 607, the plaintiff, being the owner of a certain steamer, "chartered her to the United States for the purpose of plying in the harbor of Port Royal, South Carolina, or for any other service the government might designate." The steamer having been injured while in the service of the government, one of the questions which arose in the case was whether the charterer—the government—was the owner of the steamer at the time, under the terms of the charter-party. The court in determining that question used the following language: "There is no doubt that under some forms of a charter-party, the charterer becomes the owner of the vessel chartered for the voyage or service stipulated, and consequently becomes subject to the duties and responsibilities of ownership. Whether in any particular case such result follows, must depend upon the terms of the charter-party considered in connection with the nature of the service rendered. The question as to the character in which the charterer is to be treated, is, in all cases, one of construction. If the charter-party let the entire vessel to the charterer, with a transfer to him of its command and possession, and consequent control over its navigation, he will generally be considered as owner for the voyage or service stipulated. But, on the other hand, if the charter-party let only the use of the vessel, the owner at the same time retaining its command and possession and control over its navigation, the charterer is regarded as a mere contractor for a designated service, and the duties and the responsibilities of the owner are not changed. * * * All the cases agree that entire command and possession of the vessel, and consequent control over its navigation, must be surrendered to the charterer before he can be held as special owner for the voyage or other service mentioned. The retention by the general owner of such command, possession, and control is incompatible with the existence at the same time of such special ownership in the charterer," citing a number of cases. The court, after laying down these principles, proceeded to examine the terms of the charter-party, and

reached the conclusion that by those terms the charterer did not become the owner of the steamer.

It follows, therefore, that the simple allegation in the complaint, that the "Louise" was chartered by the Northeastern Railroad Company for the purpose of towing to the city of Charleston boats containing vegetables, does not necessarily show that the railroad company thereby became the owner of the "Louise." Indeed, the other allegations in the complaint, to the effect that the defendant company operated the steamer "Louise," which was navigated by its agents and servants, are quite sufficient to show the contrary. If the United States government, when it chartered Leary's steamer for the purpose of plying in the harbor of Port Royal, or for any other service the government might designate, which, of course, involved the right of the government to send the steamer to any point it might designate, did not thereby become the owner of the steamer, certainly the Northeastern Railroad Company, when it chartered the "Louise" to tow boats laden with vegetables to the city of Charleston, did not thereby necessarily become the owner of the Louise." If the terms of the charter-party, when offered in evidence, shall prove sufficient to invest the railroad company with the character of owner, that may avail the defendant as a matter of defence; but the mere fact that the "Louise" was chartered by the railroad company, cannot avail the defendant under this demurrer.

But even if the allegation that the steamer "Louise" was chartered by the Northeastern Railroad Company, could be regarded as inconsistent with, or contradictory of, other allegations of the complaint, that would not seem to justify the demurrer in this case. *Childers* v. *Verner*, 12 S. C., 1.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court, with instruction to overrule the demurrer and proceed with the trial of the case on its merits.